**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carol Ann Pierce,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-19-03416-PHX-DJH<br><br>**ORDER** |

At issue is the denial of Plaintiff Carol Pierce's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act (the Act). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 9, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 13, Def. Br.), and Plaintiff's Reply (Doc. 14, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 8, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 17–35) as upheld by the Appeals Council (R. at 1–7).

**I.    BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on November 12, 2014 for a period of disability beginning on October 24, 2013. (R. at 20.) Her claim was denied initially on December 16, 2014, and upon reconsideration on January 4, 2016. (R. at 20.) Plaintiff appeared before the ALJ on November 20, 2017 for a hearing regarding

her claim. (R. at 20.) On April 30, 2018, the ALJ denied Plaintiff's claim, and on April 3, 2019 the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1, 30.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: vertigo, traumatic brain injury, myofascial pain syndrome, thoracic intercostal neuritis, post-herpetic neuralgia, bilateral tricompartment osteoarthritis of the knees, and degenerative disc disease of the cervical spine. (R. at 22.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 30.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 23.) Additionally, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work with the following limitations: (1) she is capable of lifting/carrying 20 pounds occasionally and up to 10 pounds frequently, (2) she is limited to standing/walking for 6 hours per workday, (3) she is limited to sitting for 6 hours per workday, (4) she can occasionally climb ramps and stairs, (5) she can never climb ladders, ropes, or scaffolds, (6) she can occasionally balance and frequently stoop, kneel, crouch, or crawl, and (7) she must avoid hazards, such as moving machinery and unprotected heights. Accordingly, the ALJ found that Plaintiff could perform her past work as a medical assistant. (R. at 29.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based

on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* At the fifth and final step, the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration. (Pl. Br. at 2.) First, Plaintiff argues that the ALJ erroneously rejected her testimony regarding the severity of her symptoms. Second, Plaintiff argues that the ALJ erroneously rejected the third-party statements of Plaintiff's husband, daughter, and sister. Third, Plaintiff argues that the ALJ

did not properly evaluate and explain Plaintiff's RFC determination. The Court agrees with each of Plaintiff's arguments.

> **A. The ALJ erred because she rejected Plaintiff's testimony for an insufficient reason—a lack of supporting objective medical evidence.**

At her hearing, Plaintiff testified regarding the functional limitations caused by her medical impairments. (R. at 51–69.) Plaintiff's testimony focused primarily on her limitations due to vertigo, which she claims prevent her from working. (R. at 57–61.) Her vertigo began after a head injury in October 2013, and it causes issues with concentration, balance, nausea, and light-headedness. (R. at 57–60.) Plaintiff also testified that she experiences vertigo nearly every day, that she cannot predict when symptoms will occur, and that surgical intervention is not an option. (R. at 58, 61, 64.)

The ALJ rejected Plaintiff's testimony because it was "not entirely consistent with the medical evidence." (R. at 26.) The ALJ noted that Plaintiff's vertigo causes her some limitations but found that they are not as severe as alleged based on the objective medical evidence. (R. at 26.) To support her opinion the ALJ summarized the medical evidence regarding Plaintiff's impairments, including her vertigo, and listed evidence that purportedly contradicts Plaintiff's claims. (R. at 26–27.) The ALJ also listed evidence regarding Plaintiff's treatment history and medications, including her use of Meclizine for dizziness, and her failure to undergo mental health counseling and other possible treatments. (R. at 27.)

ALJs perform a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons

for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id*. at 1015. ALJs "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ erred because the only reason she offered for rejecting Plaintiff's testimony—its inconsistency with the objective medical evidence—cannot be the sole reason for rejecting a claimant's testimony. *Id*. The ALJ mechanically listed the medical evidence in the record without explanation of which evidence supports or contradicts Plaintiff's testimony. (R. at 26–28.) Even if a claimant's testimony could be rejected solely because of its inconsistency with the medical evidence, the ALJ did not offer a specific, clear, and convincing basis for doing so here. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints.").

Defendant argues that the ALJ provided two additional reasons for rejecting Plaintiff's testimony that were specific, clear, convincing, and supported by substantial evidence. (Def. Br. at 7–8.) Specifically, Defendant argues that the ALJ rejected Plaintiff's testimony because (1) Plaintiff's activities of daily living (ADLs) were inconsistent with her testimony, and (2) Plaintiff's vertigo improved. (Def. Br. at 7–8.)

The Court disagrees. The ALJ did not provide these reasons as justification for rejecting Plaintiff's testimony. Instead, Defendant synthesized these reasons from the ALJ's summary of the medical records and the ALJ's analysis of Dr. Rachel Sy's opinion.[1] *See Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018*)* ("A reviewing court may only consider the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citations and quotations omitted).

---

[1] One of the reasons the ALJ offered for rejecting Dr. Sy's opinion was because Plaintiff's ADLs were allegedly inconsistent with Dr. Sy's opinion. (R. at 29.) However, the ALJ did not point to Plaintiff's ADLs as specifically contradicting Plaintiff's testimony. *See Garrison*, 759 F.3d at 1014–16 (finding error where the ALJ failed to specify which testimony was contradicted by the claimant's ADLs).

1  Similarly, the ALJ never expressed that Plaintiff's alleged improvement with treatment, or
2  allegedly conservative medical treatment contradicted her testimony.[2] Thus the Court
3  declines to affirm the ALJ on bases she did not rely on.
4  Therefore, the ALJ erred because she did not give a sufficient reason for rejecting
5  Plaintiff's testimony.

### B. The ALJ erred by rejecting the third-party statements of Plaintiff's husband, daughter, and sister.

Plaintiff's family members submitted third-party function reports on her behalf. (R. at 249–56, 263–70, 297–304.) These reports detailed lay observations regarding Plaintiff's daily activities, functional abilities, and impairments. Plaintiff's husband, daughter, and sister all described Plaintiff's observed limitations related to balance while standing and walking. (R. at 250, 263, 297.) The ALJ gave the statements "little weight as [they] are lay opinions based upon casual observation, rather than objective medical and (sic) testing." (R. at 29.)

An ALJ need only give "germane" reasons for discrediting lay witness testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Nevertheless, an ALJ must consider lay witness observations "because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." *See* SSR 96-8p. Furthermore, similar to a claimant's testimony, an ALJ cannot reject lay witness testimony simply because it is not supported by objective medical evidence. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). This is because "some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser

---

[2] Even if the ALJ had rejected Plaintiff's testimony because of her ADLs and improvement with treatment, those reasons would not have been supported by substantial evidence. The ADLs the ALJ cited do not appear to be inconsistent with Plaintiff's testimony regarding chronic vertigo, and the ALJ did not explain why they might be. Additionally, the record demonstrates that Plaintiff's vertigo was ongoing and largely unresponsive to treatment. (R. at 339, 445, 451, 501, 511, 562, 574, 588, 590.) *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (stating that ALJs may not rely on isolated instances in the record to support their conclusions rather than the record as a whole).

extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." SSR 16-3.

The ALJ did not give germane reasons for rejecting any of Plaintiff's lay witness statements. Simply put, the ALJ rejected the opinions because they were not backed by medical evidence. However, the lay witness opinions are valuable *because* they might reveal information about a claimant's impairments and limitations that might not be captured by the available medical evidence. The ALJ rejecting the opinions for the exact reason they could crystalize Plaintiff's case. This was error.

### C. The ALJ erred by rejecting the opinion of Plaintiff's treating physician, Dr. Rachel Sy.

Plaintiff claims that the ALJ provided an inadequate explanation for the Plaintiff's RFC based on the medical evidence. (Pl. Br. at 13.) The ALJ's assessment of Plaintiff's RFC was partly based on her evaluation of the medical evidence and opinions. The ALJ gave partial weight to the opinion of non-examining physician Dr. Ernest Griffith because it was purportedly consistent with the medical evidence. (R. at 28.) She gave little weight to non-examining physician Dr. John Kurtin because he opined that Plaintiff could perform medium exertion rather than light exertion. Finally, the ALJ gave little weight to the opinion of Dr. Rachel Sy, Plaintiff's treating physician, because "her opinion is completely inconsistent with the record, including to (sic) her own treating notes." (R. at 29.)

An ALJ must include in a claimant's RFC only those limitations that are supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). However, an ALJ must consider the medical evidence, and if she rejects a treating physician's opinion, she must "set forth h[er] own interpretations and explain why they, rather than the doctor['s], are correct." *Garrison*, 759 F.3d at 1012. If a treating doctor's opinion is contradicted by another doctor's opinion, the ALJ may not reject the treating doctor's opinion without setting forth "specific and legitimate reasons" for doing so that are based on substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Whether the ALJ correctly calculated Plaintiff's RFC depends on whether the ALJ correctly evaluated Dr. Sy's opinion. The Court concludes that the ALJ did not.

Based on her treatment of Plaintiff since October 2013, Dr. Sy opined that Plaintiff has various functional limitations related to chronic vertigo that originated from a subdural hematoma. (R. at 586–87.) The limitations include sitting, standing, and walking limitations that prevent Plaintiff from working more than four hours per workday. (R. at 586.) According to Dr. Sy, Plaintiff is unable to perform various postural activities. (R. at 587.) Because of her symptoms and side effects from her medications, Plaintiff would experience various non-exertional limitations that would distract her from job activities more than 20% of the workday. (R. at 587.) Finally, she would likely miss more than four days of work per month because of impairments or treatment. (R. at 587.)

The ALJ's rejection of Dr. Sy's opinion is not supported by substantial evidence. The ALJ pointed to Plaintiff's ADLs and Dr. Sy's treatment records to support her conclusion that Dr. Sy's opinion is contradicted by the record. As noted above, Plaintiff's ADLs, which include "getting along with family, friends, neighbors or others and [having] a membership with the American legion" are not inconsistent with Plaintiff's limitations due to chronic and episodic vertigo. (R. at 29.)

Furthermore, the ALJ's discussion of the medical evidence does not specifically or legitimately refute Dr. Sy's opinion regarding Plaintiff's limitations. *See Garrison*, 759 F.3d at 1012. The ALJ pointed to medical records that indicate findings of normal gait, strength, coordination, alertness, orientation, memory, and communication as evidence that contradicts Dr. Sy's findings. (R. at 29.) These findings are undisputed, but they do not address the limitations that Dr. Sy opined to, which stem from chronic, episodic, and unpredictable vertigo.[3] Moreover, the ALJs finding that "Dr Sy's own treatment notes indicated that the claimant had some balance and vertigo problems, but was doing much

---

[3] It is not clear that all of the records cited by the ALJ actually support her conclusions. For example, the ALJ cited Exhibits 1F/12 and 1F/14 for the proposition that Plaintiff had normal gait, strength, and coordination. (R. at 29.) However, those records do not contain any findings related to Plaintiff's gait, strength or coordination. (R. at 327, 329.)

better," is not supported by substantial evidence. (R. at 29.) The ALJ supported that finding with a single treatment record from January 2014, wherein Dr. Sy noted that Plaintiff's vertigo was doing much better at that time. (R. at 329.) However, over three years later, Dr. Sy noted that Plaintiff's vertigo was still an issue. (R. at 562.) *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (stating that occasional signs of improvement do not undermine consistent impairments in the overall record).

Dr. Sy's opinion regarding Plaintiff's vertigo and her attendant limitations was well supported by the record. (R. at 339, 445, 451, 501, 511, 562, 587, 588, 590.) Consequently, the ALJ erred by rejecting her opinion.

### D. Remand for calculation of benefits is the appropriate remedy.

The credit-as-true rule, if applied here, would result in a remand of Plaintiff's case for calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three-part test is satisfied. *Id*. First, the record must have been fully developed such that further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*. The credit-as-true rule allows for some flexibility and balances efficiency and fairness in conjunction with the requirement that a claimant actually be disabled in order to receive benefits. *Id*. at 1021. Thus, even if all the rule's requirements are met, the Court may still decline to apply the rule if there is "serious doubt" that the claimant is, in fact, disabled. *Id*.

All of the elements of the credit-as-true rule are met. First, the record is fully developed and additional proceedings would serve no useful purpose. Next, the ALJ provided insufficient reasons for rejecting Plaintiff's symptom testimony, the lay witness opinions, and Dr. Sy's opinion. Finally, the vocational expert testified if claimant was off-task for more than 11% per workday, then she would be precluded from work. (R. at 68.) And as noted above, Dr. Sy found that Plaintiff would be off-task for more than 20% per workday, and Plaintiff testified to experiencing vertigo nearly every day. (R. at 64, 587.)

If this evidence is credited as true, then the ALJ would be required to find that Plaintiff is disabled.

Finally, there is not serious doubt as to whether Plaintiff is, in fact, disabled. Her vertigo is extensively document throughout the record. (R. at 339, 445, 451, 501, 511, 562, 587, 588, 590). Medication did not alleviate her symptoms and, as one doctor stated, "[I]t is quite possible this is permanent." (R. at 511.) Furthermore, this result squares with the fairness considerations of the credit-as-true rule and avoids allowing an inefficient do-over. *See Benecke v. Barnhart*, 379 F.3d 587 595 (9th Cir. 2004).

Accordingly, the Court will remand for calculation and entry of benefits.

**IT IS THEREFORE ORDERED** reversing the April 25, 2018 decision of the Administrative Law Judge (R. at 17–35), as upheld by the Appeals Council on April 3, 2013 (R. at 1–7).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 7th day of February, 2020.

Honorable Diane J. Humetewa
United States District Judge